IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **TYRELL KNIGHT,** | ) | CASE NO. 4:05CV3288 |
| **Plaintiff,** | )<br>)<br>) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| **UNKNOWN DUTCHER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### INTRODUCTION

This lawsuit was initially filed against "Unknown Baker, Danielle Unknown, Chief Deputy of Corrections, Unknown Dutcher, Unknown Thach, Unknown Guenette, Unknown Officers, Unknown Sergeant, Unknown McCormick, and Unknown Gensler" on November 28, 2005. See Filing No. 1. Upon initial review, the complaint was interpreted to allege a claim against Douglas County, Nebraska. Filing No. 11. The plaintiff, an inmate incarcerated in the Nebraska Department of Correctional Services ("DCS"), alleges that in November of 2005, DCS transferred him to the Douglas County Correctional Center ("DCC") so he could testify at the hearing on his state motion for post-conviction relief. He was detained in the DCC facility for approximately one week. The plaintiff's complaint alleges that while in DCC custody, he was subjected to unnecessary force and physical injury, unsanitary living conditions, lack of access to proper medical care, and lack of access to family members, his lawyer, and the court. See Filing No. 1. The plaintiff requests injunctive relief and compensatory and punitive damages.

The court's order on initial review advised the plaintiff that his complaint did not seek recovery from the individual persons named as defendants in their individual capacities, and if he wished to recover from these named defendants, his complaint would have to be amended. The order further advised the plaintiff that he must exhaust administrative remedies before filing a federal lawsuit, and that pursuant to the Prison Litigation Reform Act, he could not recover for mental or emotional injury absent physical injury. The plaintiff was advised that he could either serve his original complaint on Douglas County, Nebraska, or amend the complaint. Filing No. 11. The plaintiff filed an amendment specifically stating that the named defendants were sued in their individual and official capacities. Filing No. 13. Upon plaintiff's motion, the plaintiff was later given leave to amend his complaint and clarify that Corporal S. Bea is a previously named "Unknown officer;" Sergeant Deases is the previously named "Unknown Sergeant;" and the defendant previously identified as Sergeant McCormick is actually Sergeant Corbett. Filing No. 38 & Filing No. 52 (Text Order).

The plaintiff also filed a motion to amend his complaint to name additional "Unknown officers," (Filing No. 35), and a motion to amend to delete "Danielle of Mental Health" (presumably "Danielle Unknown") as a defendant. Filing No. 67. However, the plaintiff

filed a Suggestion of Bankruptcy before the court ruled on Filing Nos. 35 and 67 (as well as several other motions). Filing Nos. 69 & 70. The case was therefore referred to the United States Bankruptcy Court for the District of Nebraska and terminated for statistical purposes by the Clerk of Court for the District of Nebraska. Filing No. 71. Pursuant to the Report and Recommendation of the Bankruptcy Judge, the referral to the Bankruptcy Court was withdrawn on February 20, 2007. The parties were given sixty days thereafter to "file any motions which were pending before the transfer of this case to the Bankruptcy Court." Filing No. 75. The plaintiff did not re-file his motions to amend the complaint as previously set forth in Filing Nos. 35 and 67. Therefore, the "Unknown officers" named in Filing No. 35 are not defendants and Danielle Unknown remains a defendant.

Accordingly, the plaintiff's pending complaint is a consolidation of Filing Nos. 1, 13, and 38, and the defendants are "Unknown Baker, Danielle Unknown, Chief Deputy of Corrections, Unknown Dutcher, Unknown Thach, Unknown Guenette, Corporal S. Bea, Sergeant Deases, Sergeant Corbett, and Unknown Gensler," in their individual and official capacities. With the exception of defendants Baker and Gensler, answers have been filed on behalf of all the named defendants. See Filing Nos. 27, 46, 68. Defendants Thomas Gensler, M.D. and Natalie Baker, M.D. were served and have filed a motion to dismiss. Filing No. 81. The remaining defendants, hereinafter referred to as the "non-physician defendants," have filed a motion for summary judgment. See Filing Nos. 76 & 78. The plaintiff has also filed a motion for summary judgment. Filing No. 91.

The parties have either responded to the pending dispositive motions, or the time for response has lapsed. Therefore, the motions set forth in Filing Nos. 76, 78, 81, and 91 are deemed fully submitted. For the reasons discussed hereafter, I conclude the plaintiff's motion for summary judgment must be denied, and the defendants are entitled to judgment as a matter of law.

## Filing No. 81
## (Defendants Baker and Gensler)

Defendants Baker and Gensler filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When ruling on a Rule 12(b)(6) motion, the district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004). However, whether filed by a represented plaintiff or a pro se plaintiff, a complaint must allege facts sufficient to state a claim as a matter of law. Stringer v. St. James R-1 School Dist., 446 F.3d 799 (8th Cir. 2006). "Although pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced. Pro se litigants must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." Stringer, 446 F.3d at 802 (internal citations and quotation marks omitted).

The ruling on a 12(b)(6) motion to dismiss is based on the facts set forth in the plaintiff's complaint. Facts outside the four corners of the complaint are not considered. However, Rule 12(b)(6) provides that when matters outside the pleadings are presented in response to a Rule 12(b)(6) motion and those facts are not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. The phrase "matters outside the pleadings" includes "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 948 (8th Cir. 1999)(emphasis added).

The motion to dismiss filed by defendants Baker and Gensler was originally filed before this case was referred to the Bankruptcy Court. See Filing No. 60. In response to the original motion to dismiss, the plaintiff filed a brief, affidavit, and index of evidence. Filing Nos. 62, 65 & 66.

After the Bankruptcy referral was withdrawn and the case was reopened on this court's docket, defendants Baker and Gensler re-filed their motion to dismiss. Filing No. 81. Their brief in support of the re-filed motion to dismiss incorporates the original brief submitted and further addresses the responses filed by the plaintiff (Filing Nos. 62, 65 & 66) before the case was referred to the Bankruptcy Court. The plaintiff filed no response to the re-filed motion to dismiss.

The court could exclude any consideration of Filing Nos. 62, 65, and 66, either because these filings introduce matter beyond the proper scope of a Rule 12(b)(6) motion, or because these filings were vacated because they were not re-filed in response to the re-filed motion to dismiss. However, since the defendants Baker and Gensler have submitted a brief responding to plaintiff's additional evidence, in the interest of promptly and efficiently resolving the pending motions, the court will consider plaintiff's evidentiary submissions in ruling on the motion filed by defendants Baker and Gensler. As such, the pending Rule 12(b)(6) motion filed by defendants Baker and Gensler, Filing No. 81, is now deemed a motion for summary judgment under Rule 56. The supporting and opposing submissions before the court on this motion include Filing Nos. 82, 62, 65 and 66.[1]

---

[1] The Filing No. 81 motion to dismiss was filed on April 20, 2007, and the deadline for responding was May 13, 2007. On May 8, 2007, the plaintiff filed a motion for extension of time to respond to "Defendant's Amended Motion for Summary Judgment dated April 16, 2007." Filing No. 83. The April 16, 2007 motion for summary judgment was not filed by defendants Baker and Gensler, but by the Douglas County Attorney's office on behalf of the non-physician defendants. Filing No. 83. The certificate of service attached to Filing No. 83 states that plaintiff's motion for extension of time was served on the County Attorney for Douglas County, but not on counsel for defendants Gensler and Baker. The plaintiff filed an affidavit, Filing No. 88, on June 6, 2007. Based on the totality of the record before me, I conclude that plaintiff's Filing 88 affidavit was submitted in response to the motion for summary judgment filed by the

3

Standard of Review

A motion for summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In the absence of facts supporting plaintiff's claim, the defendants are entitled to a judgment as a matter of law.

Statement of Facts

The court has decided to treat the motion to dismiss filed by defendants Baker and Gensler as a motion for summary judgment. However, this decision was made sua sponte. Under this specific circumstances, which in this case applies only to the motion filed by defendants Baker and Gensler and not the summary judgment motion filed by the non-physician defendants, the court will liberally construe the record in favor of the plaintiff and will consider not only plaintiff's affidavit and index of evidence, but also those facts set forth in his unverified complaint. The following summarizes the facts of record relevant to plaintiff's claims against defendants Baker and Gensler.

On November 8, 2005, the plaintiff was transferred from DCS to DCC to facilitate his participation and/or testimony at a hearing scheduled for November 14, 2005 on plaintiff's motion for post-conviction relief. Filing No. 65, ¶ 1; Filing No. 66, p. 12. Defendant Dutcher escorted the plaintiff to his cell with one hand on the plaintiff's shoulder and another on his arm. Filing No. 65, ¶¶ 2-3. The plaintiff had previously received a gunshot wound to the shoulder area, and although the wound had healed, it remained painful. Filing No. 1, p. 2. Defendant Dutcher's grip on the defendant's arm caused bruising, and at some point during the plaintiff's transfer to a DCC cell, he twisted or hurt his ankle. Filing No. 1, p. 2; Filing No. 65, ¶ 3.

The plaintiff states Defendant Gensler was aware that the plaintiff had been transferred from DCS, and that the plaintiff had been prescribed psychiatric medications, but defendant Gensler did not provide the plaintiff with his prescribed psychiatric medications. Filing No. 62, p. 1; Filing No. 65, ¶¶ 6, 13. The medical transfer sheet listed the plaintiff's current medications as Motrin, Vaseline, triple antibiotic ointment, benzoyl peroxide, Lopid, Tinactin, Depakote, Klonopin, Celexa, and Doxepin. Filing No. 66, p. 7.

---

non-physician defendants and/or in support of plaintiff's motion for summary judgment. See, e.g. Filing No. 93. Filing 88 will not be considered in ruling on the motion filed by defendants Baker and Gensler.

Although the plaintiff's medical transfer sheet also noted the plaintiff was recently diagnosed with Type II Diabetis Mellitus, (Filing No. 66, p. 7), the DCS medical records confirm that this diagnosis continued to evolve, and the plaintiff regulated his diabetes with diet rather than insulin. In June of 2004, the DCS medical department concluded the plaintiff was a borderline diabetic and needed to follow a diet. Filing No. 66, p. 4, 6. Although he was diagnosed with Type II Diabetis Mellitus in December of 2004, (Filing No. 66, pp. 3-4), on November 28, 2005, (two weeks after he was transferred back to DCS from DCC), the DCS medical staff diagnosed the plaintiff as pre-diabetic. Filing No. 66, p. 5.

On November 8, 2005, the date of his arrival at DCC, the plaintiff submitted four separate inmate requests asserting the following complaints and requests for medical and mental health care:

- The plaintiff claimed his left ankle and arm were injured by the excessive force used while placing him in a DCC cell. He requested medical attention. Filing No. 66, p. 16.

- The plaintiff claimed he was not getting his prescribed psychiatric medications, and that he was diabetic. Filing No. 66, p. 18.

- The plaintiff claimed he needed to see a psychiatrist as soon as possible. He stated he had migraines, his eyes were hurting, and his head was spinning. He claimed he needed 800 milligrams of Motrin as soon as possible, and he was withdrawing from his Zyprexia, Zoloft, Ativan, and Haldol injections. Filing No. 66, p. 20. Of note, with the exception of Motrin, none of these medications was listed on the plaintiff's medication transfer sheet. Filing No. 66, p. 7.

- The plaintiff claimed he had jock itch, athlete's foot, dry skin, and hemorrhoids, and again stated he was diabetic and needed his psychotropic medications. He asked for tolfonate for his jock itch and athlete's foot, and Vaseline for his dry skin and hemorrhoids. Filing No. 66, p. 22.

Defendant Gensler medically evaluated the plaintiff on November 9, 2005. The plaintiff stated he wanted his medications. He further stated he was coughing during the night, and his left elbow and ankle were injured. Filing No. 66, p. 15. Dr. Gensler examined the plaintiff and concluded he was in no acute distress and could ambulate without difficulty. He noted a two centimeter very superficial abrasion on plaintiff's left elbow, but no associated swelling, bruising, or decreased range of motion. The left ankle was entirely normal, with no bruising or edema. As to plaintiff's complaints of injuries, Dr. Gensler concluded there were "none of significance." Filing No. 66, p. 15. Despite the plaintiff's numerous complaints of acne, there were no significant findings. Although Dr. Gensler noted plaintiff had no diabetes by history, he did order that plaintiff's blood sugar be checked twice a day for the first four days of plaintiff's confinement at DCC. See Filing

5

No. 66, p. 11. The plaintiff was told to get his over-the-counter medications (e.g. benzoyl peroxide) at the store. Filing No. 66, p. 15. Doctor Gensler concluded the plaintiff had "very somatic-oriented" complaints, but no objective findings. Filing No. 66, p. 15.

After seeing Dr. Gensler on November 9, 2005, the plaintiff sent five additional inmate requests that day. These inmate requests raised the following physical and mental health complaints.

- The plaintiff complained that his diabetes was really hurting, he has migraines, and his eyes are burning. He also stated that his glasses were scratched due to the excessive force used by officers the day before. Filing No. 66, p. 19. Dr. Gensler responded: Mr. Knight–I saw you today. Such medications needed for medical issues will be provided. Your 'wounds' were insignificant." Filing No. 66, p. 19.

- The plaintiff complained of hemorrhoidal pain, which was now exacerbated by the severe diarrhea caused by not receiving his Celexa and Depakote as prescribed. He requested immediate medical attention. Filing No. 66, p. 21.

- In an "emergency" request for medical help, the plaintiff claimed he was being poisoned by lead in DCC's drinking water. He noted that as a diabetic, he is thirsty. He asked to receive a nutritional drink every four hours. Dr. Gensler responded: "You are not diabetic and lead is not a water borne problem here." Filing No. 66, p. 23.

- In a request directed to Dr. Baker, the plaintiff complained that he was unable to sleep because the water was contaminated with lead poison. A mental health appointment was scheduled. Filing No. 66, p. 24.

The plaintiff was transferred back to DCS on November 15, 2005. Filing No. 1, p. 4.

### Legal Analysis

The plaintiff alleges defendants Baker and Gensler provided inadequate health care in violation of his Eighth Amendment rights. Defendants Gensler and Baker argue that the plaintiff's claims against them must be dismissed. Specifically, these defendants claim the plaintiff has neither alleged nor shown that defendants Baker and Gensler were deliberately indifferent to the plaintiff's serious medical needs. Filing No. 82, ex. A , pp. 5-6 (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976) and Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)).

To show deliberate indifference, the plaintiff must demonstrate that he suffered objectively serious medical needs, and that officials actually knew of but deliberately

disregarded those needs. Hartsfield v. Colburn 2007 WL 2050849, *2 (8th Cir. July 19, 2007); Johnson v. Hamilton, 452 F.3d 967, 972-73 (8th Cir. 2006). "[S]ociety does not expect that prisoners will have unqualified access to health care. Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992)(citing Estelle, 429 U.S. at 103-104).

The plaintiff raised numerous medical complaints while incarcerated at DCC. His complaints were not ignored. He arrived at the facility at 5:00 p.m. on November 8, 2005, and based on his inmate requests, was examined by defendant Gensler the next day. He submitted one request to defendant Baker, a psychiatrist, and based on that request, a mental health appointment was scheduled.

There is no evidence of any direct contact between defendant Baker and the plaintiff during his brief stay at DCC. To the extent that the plaintiff may be claiming Dr. Baker, as the "head psychiatrist," is liable for the actions or inactions of defendant Gensler, the plaintiff has failed to state a claim. Respondeat superior is not a basis for liability under 42 U.S.C. § 1983. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).

The plaintiff may, however, be claiming that defendant Baker should have initiated contact with the plaintiff rather than ignore the plaintiff's concern about not receiving his prescribed psychotropic medications. The plaintiff clearly alleges that defendant Gensler failed to provide needed medications. However, as with the plaintiff's other medical complaints, his requests for prescribed medications were not ignored. Although the plaintiff did not receive his psychotropic medications on November 8, 2005, (see Filing No. 66, p. 13), on November 9, 2005, defendant Gensler assured the plaintiff that he would receive the medications needed for his medical issues. Filing No. 66, p. 19.

Even assuming the plaintiff never received his psychotropic medications while incarcerated at DCC, he returned to DCS on November 15, 2005 and therefore, at most, missed eight days of medication. Although the plaintiff complained of medication withdrawal symptoms ranging from a spinning head to diarrhea, these complaints began the day he arrived at DCC, raising serious doubts that these symptoms were actually associated with withdrawal from any medication. Moreover, the symptoms described in plaintiff's evidence, although perhaps significant while they lasted, did not rise to the level of "serious" medical needs. Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir.1999) (holding that breathing problems, chest pains, dizziness, sinus problems, headaches, and loss of energy due to second-hand smoke are, objectively speaking, relatively minor, and not sufficiently serious to be constitutionally actionable); Turner v. Dallas County Jail, 2006 WL 1388441, *4 (N.D. Tex. 2006)(holding that an incident of dizziness, an increased temperature, shortness of breath, headache, and diarrhea is not a serious medical condition).

Defendant Gensler examined the plaintiff on November 9, 2005 and found no objective evidence indicative of any serious medical condition. Despite the plaintiff's

7

conclusory statements of harm, there is no evidence that any delay in receiving prescribed psychotropic medications caused any actual harm to plaintiff, or that the delay caused a significant risk of serious harm. The serious need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis. Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999). The plaintiff's alllegations are neither. Accordingly, whether directed at defendant Gensler or defendant Baker, the plaintiff's Eighth Amendment claim arising from an alleged failure to provide prescribed psychotropic medications must be dismissed. Bumpus v. Canfield, 2007 WL 2071607, *4 (W.D.N.Y. July 20, 2007)(granting summary judgment for a prison doctor who delayed refilling the plaintiff's medications for several days where the plaintiff offered no evidence supporting his conclusory allegations that any delay in his receipt of medication caused plaintiff's health to suffer); Pendergraph v. Evans, 2006 WL 2987729, *4 (E.D. Tenn. 2006)(granting summary judgment for the prison doctor who allegedly failed to prescribe medications due to budget constraints because '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. . . ."); Brown v. Wigin, 1995 WL 376482, *4 (E.D. Pa. 1995)(granting summary judgment for the prison pharmacist where the plaintiff did not receive his prescription medications for six days but offered no evidence of any physical harm resulting from the delay).

The plaintiff claims defendant Gensler provided inadequate care by refusing to acknowledge that the plaintiff was diabetic. Defendant Gensler was not required to adopt the diagnosis listed on the plaintiff's medical transfer sheet. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. See also Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993)("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.").

In addition, there is no evidence that defendant Gensler was even negligent. The plaintiff's diabetes was diet-controlled, and within two weeks of his release from DCC, the plaintiff was diagnosed as "pre-diabetic." There is no evidence the plaintiff was actually diabetic in early November 2005. There is also no evidence that defendant Gensler disregarded the plaintiff's complaints of diabetes. Although he did not believe the plaintiff was diabetic upon entry to DCC, defendant Gensler nonetheless ordered monitoring of plaintiff's blood sugar levels for the first four days plaintiff was housed at the DCC. There is no evidence supporting a claim that, with regard to diabetes, defendant Gensler misdiagnosed the plaintiff, acted indifferently toward the plaintiff, disregarded his complaints, or harmed the plaintiff by failing to correctly diagnose and treat his alleged diabetes.

As to the remainder of the plaintiff's claims, a two centimeter abrasion, especially one that is not swollen, is not a serious medical condition, nor is ankle pain that does not interfere with ambulation. Williams-El v. Johnson, 872 F.2d 224 (8th Cir. 1989)(holding

8

that neither a split lip nor a minor bruise was a serious condition). Absent some allegation that treatment delays seriously exacerbated the problems, hemorrhoids are not a serious medical condition. Barr v. Delo, 1993 WL 358474, *1 (8th Cir. 1993). At the November 9, 2005 examination, Defendant Gensler recommended that the plaintiff obtain his requested over-the counter medications from the store for treatment of his jock itch and acne.

The allegations of the plaintiff's complaint and the evidence of record fail to demonstrate that the plaintiff suffered from any objectively serious medical needs, and that defendants Baker and Gensler actually knew of but deliberately disregarded those needs. Defendants Baker and Gensler are entitled to judgment as a matter of law.

### Filing Nos. 76 and 78
### (The Non-Physician Defendants)

Defendants Danielle Unknown, Chief Deputy of Corrections, Unknown Dutcher, Unknown Thach, Unknown Guenette, Corporal S. Bea, Sergeant Deases, and Sergeant Corbett, in their individual and official capacities, (the non-physician defendants) filed a motion and amended motion for summary judgment. Filing Nos. 76 & 78. The plaintiff filed a cross-motion for summary judgment. Filing No. 91. The plaintiff and non-physician defendants filed evidence in support of their respective motions. Accordingly, as to these motions, the non-moving party has the burden to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

> Once the moving party has met its burden of showing "the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,] . . . the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."

Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003) (quoting Stone Motor Co. v. Gen. Motors, Corp., 293 F.3d 456, 465 (8th Cir. 2002)(internal citations omitted)).

### Statement of Facts

With the exception of the plaintiff's affidavit dated June 4, 2007, (Filing No. 88), the relevant evidence submitted by the plaintiff in response to the non-physician defendants' summary judgment motion and in support of his own summary judgment motion was also offered in opposition to the motion to dismiss filed by defendants Baker and Gensler. This evidence will be considered in ruling on the motions for summary judgment filed by the plaintiff and non-physician defendants, but the summary of this evidence will not be repeated in this memorandum and order. In addition to the evidence already discussed,

the following undisputed evidence was offered by the parties in support of or in opposition to the pending motions for summary judgment.

At approximately 5:00 p.m. on November 8, 2005, the plaintiff was in the admissions area of DCC awaiting assignment to a cell. Defendant Dutcher was working in that area of the DCC facility when he heard an argument erupt over the use of telephones. Filing No. 80, ex. 2. The plaintiff participated in this argument.

Defendant Dutcher repeatedly ordered the plaintiff to stop creating a disruption over the use of the phone, (Filing No. 80, ex. 2), but the plaintiff ignored these orders. Since the plaintiff refused to calm down, it was decided that he would be placed in an isolation cell to avoid further problems. Filing No. 80, ex. 2.

While being escorted to the isolation cell by defendant Dutcher, the plaintiff continued to argue, removed his glasses, and started to clench his fists. Defendant Dutcher interpreted these acts as threatening and aggressive. When defendant Dutcher and the plaintiff reached the isolation cell, the plaintiff stopped in front of the open cell door in a manner that blocked the door from being closed, and he continued yelling at defendant Dutcher. Filing No. 80, ex. 3. Defendant Dutcher demanded that the plaintiff enter the cell, and when the plaintiff refused to comply, defendant Dutcher put his right hand on the plaintiff's left shoulder, guided him into the cell, and told him to sit down. Filing No. 80, ex. 2. Instead of sitting down, the plaintiff jumped up onto the bench inside the cell, clenched his fists, and continued yelling. He refused to comply with defendant Dutcher's repeated orders to sit down. Filing No. 80, ex. 2.

A "Code Blue" was called. Filing No. 80, exs. 3 & 4. With the assistance of defendant Thach and officers Smith, Hendrichs, and Schmaderer (who are not named defendants), defendant Dutcher put the plaintiff on the ground, handcuffed him and placed him in leg irons. The handcuffs and leg irons were double-locked and checked by the medical department. The plaintiff was placed on lockdown status and remained in Isolation Cell number 5 pending a hearing. Filing No. 80, exs. 2, 4 & 5; Filing No. 93, ex. 18. The plaintiff states he was bruised, obtained a swollen ankle, and developed an ear infection as a result of this incident. Filing No. 88, ¶ 1.

As previously discussed, the plaintiff submitted several inmate requests for medical care during the evening following this incident and over the next day. None of these requests mentioned the plaintiff's alleged ear injury/infection. In addition to the previously discussed requests sent to defendants Gensler and Baker, on November 9, 2005, the plaintiff submitted an inmate request directed to defendant Unknown Danielle (Danielle of Mental Health). In this inmate request, the plaintiff complained that he needed his medications, was unable to sleep, "food won't stay in me," and he was experiencing lead poisoning from the water. An appointment was scheduled on November 14, 2005. Filing No. 66, p. 25.

On November 12, 2005, while officers were searching the plaintiff's cell for trash and other contraband, the plaintiff started yelling and jumped from his seated position on the bed to lunge at Officer Sampson (not a named defendant). The plaintiff was "swinging wildly trying every means possible to make contact with an officer." Filing No. 80, ex. 9. A "Code Blue" was called. Filing No. 80, exs. 10 & 11. Defendant Corbett, along with Sampson, and prison officers Rudesill, Brook, Moss, and Allen (not named defendants), pushed the plaintiff face-down onto his bed, stabilized his head, and applied handcuffs and leg shackles. The plaintiff fiercely resisted being restrained, (see Filing No. 80, exs. 9-13), and states his head was slammed onto the metal steel bunk during this scuffle. Filing No. 88, ¶ 6. After the plaintiff was restrained, a nurse was called to check the handcuffs and leg shackles. As the officers were leaving the cell, the plaintiff continued to yell, kick, and thrash around. However, once he became fully compliant, the restraints were removed. Filing No. 80, exs. 9-13.

The plaintiff also alleges he was allowed one shower during his entire week at DCC, his cell was "filthy," and his legal work was confiscated. Filing No. 88, ¶¶ 4-5.

There are no inmate requests of record dated after November 9, 2005. Therefore, there are no inmate requests of record addressing whether the plaintiff's medical complaints continued after November 9, 2005, any complaints related to the November 12, 2005 incident, or any complaints addressing the lack of access to a shower, the condition of plaintiff's cell, or the confiscation of his legal work.

Upon entering the DCC, the plaintiff was given a copy of the Douglas County Correctional Center Inmate Rules and Regulations Handbook, which outlines the rules and regulations inmates must follow while incarcerated at that facility. Filing No. 80, ex. 16 (Hubbard affidavit), ¶ 5. Section 11 of the DCC Inmate Rules and Regulations Handbook outlines that institution's grievance process. Section 11.2 (A) states that "[w]hen an inmate decides to file a grievance of an institutional nature, it is the inmate's responsibility to secure the required grievance form." Filing No. 80, ex. 1, § 11.2 (A). The inmate must complete the inmate portion of the grievance form and submit it to the Captain's Office within seven days of the incident giving rise to the complaint. The grievance is then investigated and a determination made. If an inmate does not agree with a grievance determination, he can obtain an additional grievance form and appeal the decision to the Chief Deputy of Corrections. The Chief Deputy of Corrections must then review the grievance and issue a response. If the inmate disagrees with the Chief Deputy of Corrections' response, the inmate is not precluded from seeking other remedies. However, the Handbook clearly warns that "internal remedy requests are usually required prior to submitting a complaint to an outside agency or group." Filing No. 80, ex. 1, § 11.2 (D).

In accordance with § 11.2 (A) of the Handbook, the plaintiff requested a grievance form on November 10, 2005. Filing No. 80, ex. 14. A blank grievance form was provided to the plaintiff that same day. However, the plaintiff never filed a completed grievance form related to any of the issues raised in his pending complaint. Filing No. 80, ex. 15 & ex.16, ¶ 19.

11

Legal Analysis

The non-physician defendants claim they are entitled to summary judgment because: 1) the plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act; 2) any claim against these defendants in their official capacity is a claim against Douglas County, and the plaintiff has failed to show that a "municipal policy"' or "custom" caused a violation of his constitutional rights; 3) the plaintiff's evidence fails to raise a claim of excessive force; 4) the plaintiff's injuries, if any, were *de minimis*; and 5) the plaintiff cannot recover for emotional distress when his injuries were no more than *de minimis.*

The plaintiff claims he is entitled to summary judgment because: 1) the evidence establishes that the force used was excessive; 2) Douglas County's "Code Blue" policy authorizes the use of excessive force; 3) the plaintiff was injured; 4) these injuries were sustained due to the wanton and malicious conduct of the non-physician defendants; and 5) the non-physician defendants denied the plaintiff access to medical care.[2]

    1.    Failure to Exhaust Administrative Remedies.

Section 1997e (a) of the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e(a)(emphasis added). Pursuant to § 1997e(a), a prisoner must exhaust all administrative remedies available through the prison system before filing a lawsuit challenging prison conditions. This exhaustion requirement is mandatory; the court cannot, in its discretion, waive this requirement. Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006).

Failure to exhaust is an affirmative defense under the PLRA. Jones v. Bock, 127 S.Ct. 910, 912 (2007). The defendants have the burden of pleading and proving the plaintiff failed to exhaust his administrative remedies. Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001).

The DCC has an explicit and published grievance procedure for resolution of prisoner complaints, and the plaintiff was made aware of this procedure but did not file a

---

[2]The plaintiffs motion for summary judgment also raises the claim that defendant Baker and Gensler were deliberately indifferent to his medical needs. As previously discussed, whether analyzed under a Rule 12(b)(6) standard or with the benefit of plaintiff's additional evidentiary submissions, the plaintiff's claim against these defendants must be dismissed.

grievance. Read liberally, the plaintiff claims that although he did not file a grievance, he was not required to under the facts of this case because he was in the DCC for only a week.

The plaintiff requested and received a blank DCC grievance form on November 10, 2005. He has submitted no evidence supporting a claim that prison officials at either the DCC or the DCS interfered with his ability to file a grievance. However, under the DCC grievance procedure, the plaintiff was given seven days from the date of the incidents in question (or until, at the earliest, November 15, 2005) to submit his completed grievance to the DCC Captain's Office. The plaintiff never submitted a completed grievance with the DCC, but he was also transferred from that facility back to the DCS on November 15, 2005.

Under the PLRA, an inmate must exhaust available administrative procedures before filing suit even if he is complaining of an isolated incident of excessive force and is requesting a remedy (e.g. damages) which cannot be obtained through the prison grievance process. Foulk v. Charrier, 262 F.3d 687, 695 (8th Cir. 2001)(citing Booth v. Churner, 531 U.S. 956 (2001)). However, the exhaustion question rests, in the first instance, on whether an administrative remedial process is truly available to the inmate. For example, if the administrative grievance process itself is extinguished upon an inmate's transfer to another facility, the inmate has no "available" administrative process to exhaust. Hill v. Chalanor, 128 Fed. Appx. 187, 188, 2005 WL 872929, *1 (2d Cir. 2005).

Although there is no provision in the DCC's published grievance procedure allowing termination of the grievance process upon the inmate's transfer to another facility, there is also no evidence explaining what, if anything, occurs when an inmate files a grievance against the DCC after he is no longer housed at that facility, to whom the inmate submits such a grievance, or whether this plaintiff was aware of the grievance process to be followed upon his return to DCS custody.

The non-physician defendants have failed to meet their burden of proving the plaintiff failed to exhaust his "available" administrative remedies before filing this lawsuit. Therefore, under the unique facts raised in this case, the non-physician defendants' motion for summary judgment based on failure to comply with the PLRA's exhaustion requirement must be denied.

  2. Claims Against the Defendants in Their Official Capacity.

A suit against a public employee in his or her official capacity is actually a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, the plaintiff's claims against the non-physician defendants, in their official capacities, is a claim against Douglas, County, Nebraska. Eagle v. Morgan, 88 F.3d 620, 629 n. 5 (8th Cir. 1996), quoting Kentucky v. Graham: "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."

A county may be liable under section 1983 if its "policy" or "custom" caused a violation of the plaintiff's constitutional rights. Doe By and Through Doe v. Washington County, 150 F.3d 920, 922 (8th Cir. 1998)(citing Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County, 901 F.2d 642, 645 (8th Cir.1990)(citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental custom, a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Jane Doe, 901 F.2d at 646.

The plaintiff claims the DCC's "Code Blue" policy or alert system authorizes prison officials to use excessive force in violation of an inmate's constitutional rights. He has presented no evidence to substantiate this claim. The "Code Blue" procedure, be it a policy or a custom, is not explained in the record. The most that can be inferred from the evidence is that a "Code Blue" is called when a prison guard wants assistance with handling an inmate. There is nothing of record stating how this procedure or custom was established, what circumstances justify a "Code Blue" request, what type of response is expected, or what factors are considered in determining the magnitude of response.

The plaintiff has failed to meet his burden of proving that any Douglas County policy or procedure caused a violation of plaintiff's constitutional rights. As to all claims alleged against the non-physician defendants in their official capacities, these defendants are entitled to judgment as a matter of law.

    3.    <u>Denial of Access to Medical Care</u>.

The plaintiff's motion for summary judgment raises a claim that the non-physician defendants denied or hindered the plaintiff's access to medical care.

> Deliberate indifference to the serious medical needs of inmates may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

14

> intentionally interfering with the treatment once prescribed." . . . . In order to find a prison official liable for a deliberate indifference claim, the inmate must prove that (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk.

Robinson v. Hager, 292 F.3d 560, 563 -64 (8th Cir. 2002)(quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

An inmate request was sent to Unknown Danielle (Danielle of Mental Health) on November 9, 2005 requesting medications, and including plaintiff's complaints of insomnia, diarrhea, and lead poisoning. In response, an appointment was scheduled on November 14, 2005. Filing No. 66, p. 25. Other than this inmate request, there is no evidence that Unknown Danielle had any contact with the plaintiff or was involved in the circumstances underlying the plaintiff's claims. The plaintiff's claims against unknown Danielle must be dismissed. See Williams-Bey v. Kempker , 192 Fed.Appx. 569, 572, 2006 WL 1707962, **2 (8th Cir. 2006)(affirming summary judgment where there was no evidence the prison nurse deliberately ignored the plaintiff's serious medical needs).

There is no evidence that any acts or omissions performed by the remaining non-physician defendants affected the plaintiff's access to medical care. As previously discussed, there is likewise no evidence that the plaintiff was experiencing any medical or mental circumstances that caused or presented a risk of causing serious harm. Even assuming a "serious" medical condition existed, the plaintiff was seen by a physician on November 9, 2005 who described plaintiff's complaints as "very somatic-oriented" without objective findings. Filing No. 66, p. 15. The non-physician defendants are not qualified and cannot be expected to notice "serious medical conditions" that were not discovered by a licenced physician upon medical examination.

The plaintiff's claims against the non-physician defendants alleging they delayed or denied his access to medical care must be dismissed.

    4.    <u>Excessive Force</u>.

The plaintiff claims the non-physician defendants used excessive force on November 8, 2005, when they handcuffed and shackled him in an isolation cell following the telephone use disruption, and on November 12, 2005, when they handcuffed and shackled him in his cell after he attempted to assault a guard. The plaintiff claims his arm and ankle were injured during the first incident; he does not allege or produce evidence of any injury arising from the second incident. He claims, however, that the force used was excessive and violated his Eighth Amendment rights.

The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain" by their jailers. U.S. v. Miller, 477 F.3d 644, 647 (8th Cir. 2007).

> When jail officials are alleged to have used excessive force against a prisoner, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." Howard v. Barnett, 21 F.3d 868, 872 (8th Cir.1994).

Miller, 477 F.3d at 647.   The factors considered in evaluating whether the officers acted in good faith when using physical force to restrain an inmate include:

1. The need for force;
2. The correlation between the need for force and the amount of force used;
3. The extent of the inmate's injury;
4. The threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them at the time; and
5. Any attempt by the officers to temper the severity of the response.

Stenzel v. Ellis  916 F.2d 423, 427 (8th Cir. 1990).   When a prisoner, having been warned several times, "refuses to comply with a legitimate jail security regulation, the incident has escalated into a 'disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff.'"  Stenzel, 916 F.2d at 426 (quoting Whitley v. Albers, 475 U.S. 312, 320 (1990).

   The undisputed evidence establishes that irrespective of who started the telephone confrontation on November 8, 2005, the plaintiff escalated the situation by both participating in the argument and confronting and defying the authority of the prison officers.  The plaintiff exhibited both defiant and assaultive conduct toward prison officers on November 12, 2005.  The officers had a reasonable basis for believing that, if allowed to continue, the plaintiff's conduct would pose a risk to the officers directly, or by inciting riotous conduct within the prison population.  Before resorting to physical force, the officers made several attempts to resolve the disruption through verbal commands, but the plaintiff refused to comply.  In both instances, additional officers were called to the scene and through their collective efforts, the plaintiff was physically restrained in order to quell the disruption.  In both instances, the plaintiff not only failed to comply with verbal orders but resisted the officers' physical efforts to place him in handcuffs and shackles.  There is no evidence that the officers used physical force beyond what was necessary to stop his disruptive behavior, and there is no evidence they used any force whatsoever once he was subdued and locked in his cell.  Whatever injuries the plaintiff sustained were, in the first incident, very minor; and in the second incident, unreported.

   Based on the undisputed evidence, the force used by the officers on November 8, 2005 and on November 12, 2005 was not excessive and was applied in a good-faith effort

16

to maintain or restore discipline. These officers' motion for summary judgment regarding the plaintiff's excessive force claim must be granted.[3] See, e.g. Howard v. McKee, 1999 WL 220098, *1 (8th Cir. 1999)(affirming summary judgment in favor of prison guards where the inmate presented no evidence challenging defendants' averrals that he broke free from his escorts while outside his cell and force was required to regain control over him).

    5.    <u>Conditions of Confinement</u>.

The plaintiff states his constitutional rights were violated while in DCC custody because he was allowed only one shower, his cell was "filthy," and he was denied phone calls and recreation. Filing No. 88, ¶¶ 4-5.

"The Constitution does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991)(internal citations and quotation marks omitted). Inmates are entitled to "reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).

---

[3] I therefore need not address these defendants' *de minimis* injury argument. I note, however, that the argument raised in this section of defendants' brief is not supported by cited case law. Citing law Hudson v. McMillian, 503 U.S. 1, 9-10, the non-physician defendants argue:
> Plaintiff has failed to allege an injury sufficient to meet the standard for excessive force claims. Plaintiff must allege that he received an injury that is not *de minimis* in nature.

Filing No. 79, p. 7. Hudson does not state that *de minimis* <u>injuries</u> are never sufficient to support an Eighth Amendment excessive force claim. Hudson explained that in Eighth Amendment excessive force cases, the focus is on the amount of force used, and not the amount of injury inflicted. Hudson held:
> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

Hudson, 503 U.S. at 9. See also Howard v. Barnett, 21 F.3d 868, 872-73 (8th Cir. 1994). *De minimis* uses of physical <u>force</u> are not proscribed by the Eighth Amendment unless they are "repugnant to the conscience of mankind." Hudson, 503 U.S. at 10(quoting Whitley v. Albers, 475 U.S. 312, 327 (1986). However, while "some actual injury is required in order to state an Eighth Amendment violation, (White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994)), pain alone is a sufficient injury to allow for recovery on an Eighth Amendment excessive force claim. McLaurin v. Prater, 30 F.3d 982, 984 (8th Cir.1994).

17

However, lack of access to a shower, a phone, or recreational activities does deny an inmate the "minimal civilized measure of life's necessities," and being housed in what the plaintiff only generally describes as a "filthy" cell for a week is not cruel and unusual punishment. White v. Nix, 7 F.3d 120, 121 (8th Cir. 1993)(holding a prisoner confined to an allegedly unsanitary cell for eleven days could not prove an Eighth Amendment violation because of the "relative brevity" of his stay).

      6.    Confiscation of Legal Papers.

The plaintiff states his legal papers were taken from his cell in violation of his constitutional rights. Filing No. 88, ¶ 5. Confiscating an inmate's legal papers states a claim under section 1983 "if the taking 'results in interference with or infringement of' the prisoner's right to access to the courts.'" Weber v. Wood 1993 WL 24781, *1 (8th Cir.1993)(quoting Tyler v. "Ron" Deputy Sheriff, 574 F.2d 427, 429 (8th Cir. 1978)). The plaintiff has presented no evidence indicating the loss of his legal papers impaired his ability to pursue any legal claim. The defendants are entitled to summary judgment on this claim.

Accordingly,

IT IS ORDERED:

1. The motion to dismiss filed by defendants Baker and Gensler, Filing No. 81, is deemed a motion for summary judgment and is granted;

2. The motions for summary judgment filed by defendants Danielle Unknown, Chief Deputy of Corrections, Unknown Dutcher, Unknown Thach, Unknown Guenette, Corporal S. Bea, Sergeant Deases, and Sergeant Corbett, in their individual and official capacities, Filing Nos. 76 & 78, are granted;

3. The plaintiff's motion for summary judgment, Filing No. 91, is denied; and

4. Judgment will be entered in accordance with this Memorandum and Order.

Dated this 20th day of August, 2007.

                              BY THE COURT:

                              s/Laurie Smith Camp
                              United States District Judge